**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NICK'S GARAGE, INC.,**

                            **Plaintiff,**

        **vs.**                                        **5:12-cv-868**
                                                       **(MAD/DEP)**

**NATIONWIDE MUTUAL INSURANCE COMPANY,**
**NATIONWIDE AFFINITY INS. CO. OF AMERICA,**
**NATIONWIDE GENERAL INSURANCE COMPANY,**
**NATIONWIDE MUTUAL FIRE INSURANCE**
**COMPANY, NATIONWIDE PROPERTY AND**
**CASUALTY INSURANCE COMPANY, AND**
**NATIONWIDE INSURANCE COMPANY OF**
**AMERICA,**

                            **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**BOUSQUET HOLSTEIN PLLC**                 **CECELIA R. CANNON, ESQ.**
100 West Fayette Street, Suite 900         **LAWRENCE M. ORDWAY, JR., ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**MURA & STORM, PLLC**                     **ROY A. MURA, ESQ.**
14 Lafayette Square                        **ERIC T. BORON, ESQ.**
930 Rand Building
Buffalo, New York 14203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 25, 2012, Plaintiff commenced this suit in New York State Supreme Court, in

Onondaga County. *See* Dkt. No. 1. In the complaint, Plaintiff asserts claims of breach of

contract, *quantum meruit*, and violations of New York General Business Law § 349. *See id.* On

May 10, 2012, Defendant removed the action to this Court based upon diversity of citizenship.

*See id.* Defendant Nationwide Mutual Insurance Company, initially the only named Defendant,

removed the action to this Court on May 29, 2012, and answered the complaint that same day.

*See id.* On March 26, 2013, by leave of Court, Plaintiff filed an amended complaint naming five

additional co-Defendants. *See* Dkt. No. 25.[1] Additionally, Plaintiff's amended complaint dropped

the *quantum meruit* cause of action. *See id.*

Currently before the Court is Defendant's motion for summary judgment brought pursuant

to Rule 56 of the Federal Rules of Civil Procedure.[2]

## II. BACKGROUND

From 2007 through 2012, eighteen respective vehicles, described by their vehicle

identification numbers ("VIN") in Plaintiff's amended complaint, suffered property damage. *See*

Dkt. No. 59-41 at ¶ 7. Among the vehicles at issue, a vehicle owned by Andrew Foster suffered

two incidents of property damage, one occurring on or about July 27, 2011, and the other

occurring on or about February 7, 2012. *See id.* at ¶ 8. Property damage claims were eventually

---

[1] The named Defendants in this action shall collectively be referred to as Defendant "Nationwide."

[2] The Court notes that there are currently six other cases pending which share an identity of issues to the present matter. *See Jeffrey's Auto Body, Inc. v. State Farm Gen. Ins. Co.*, No. 5:12-cv-635 (MAD/DEP); *Nick's Garage v. State Farm Fire and Casualty Ins. Co.*, No. 5:12-cv-633 (MAD/DEP); *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, No. 5:12-cv-777 (MAD/DEP); *Jeffrey's Auto Body, Inc. v. Progressive Casualty Ins. Co.*, No. 5:12-cv-776 (MAD/DEP); *Jeffrey's Auto Body, Inc. v. State Farm Fire and Casualty Ins. Co.*, 5:13-cv-1218 (MAD/DEP); and *Nick's Garage, Inc. v. State Farm Fire and Casualty Co.*, 5:13-cv-1217 (MAD/DEP).

submitted to Defendant Nationwide by the respective owners of the vehicles. *See id.* at ¶ 9. Each of the vehicles was repaired at Plaintiff's auto collision repair shop. *See id.* at ¶ 10.

According to Plaintiff, these customers fall into two categories, the "First-Party Assignors" and the "Third-Party Assignors" (collectively, the "Assignors"). Although the theories of recovery differ for these two types of assignors, Plaintiff alleges that Defendant was obligated to repair the vehicles of all of the Assignors to their pre-accident condition.

The first fourteen of the nineteen property damage claims listed in paragraph eleven of Plaintiff's amended complaint belong to the First-Party Assignors, *i.e.*, the owners of the vehicles that Plaintiff repaired were auto insurance policy holders with Defendant Nationwide at the time of the property damage and repairs. *See id.* at ¶ 11. The remaining five property claims in the amended complaint belong to the Third-Party Assignors, *i.e.*, these vehicles were damaged by Defendant Nationwide automobile insurance policy holders. *See id.* at ¶ 12. Defendant contends that each of the nineteen vehicles at issue were repaired and restored by Plaintiff to the vehicle's pre-accident condition, without the vehicle owners having to pay any money out of pocket, other than any deductible owed by the First-Party assignors. *See id.* at ¶ 13. While Plaintiff admits that the vehicles were repaired to their pre-accident condition and that the First-Party assignors were responsible for any deductibles, it denies "that the vehicle owners were not responsible for the cost of any repairs beyond what Defendants reimbursed." Dkt. No. 69 at ¶ 13. Specifically, Plaintiff contends that "the Authorization and Guidelines for Repairs signed by each customer explicitly stated that the customer was responsible for the full cost of the repairs, regardless of what any insurer might reimburse," and that "the Final Invoices for each repair show that each customer was billed the full amount of the repairs, not just what Defendants' paid." *Id.* Plaintiff then goes on to clarify that, "[a]s consideration for Plaintiff's customers assigning their claims

against Defendants to Plaintiff, Plaintiff forgoes enforcing its rights to collect the repair costs from the customers." *Id.*

Plaintiff contends that all of the Assignors brought their vehicles to Plaintiff for repairs after being damaged during accidents. Each of the Assignors made Plaintiff his or her "designated representative" pursuant to New York regulation. A designated representative is authorized to negotiate with an insurer on behalf of a customer for repairs to a vehicle. *See* 11 N.Y.C.R.R. § 216.7(a)(2). In connection with each vehicle, Plaintiff sent Defendant an estimate of the repairs necessary to return the vehicles to their pre-accident condition. Plaintiff alleges that Defendant then submitted estimates to Plaintiff which were insufficient to restore the vehicles to their pre-accident condition. Thereafter, Plaintiff contends that it served upon Defendant Notices of Deficiencies informing Defendant that an agreed upon amount had not been reached for the repairs. Plaintiff alleges that, although it still completed the repairs necessary to return the vehicles to their pre-accident condition, Defendant failed to fully pay for those repairs, thereby violating its contractual and regulatory obligations to put the vehicles in their pre-accident condition.

The parties agree that most of the deficiencies Plaintiff claims that it is owed is due to the hourly labor rates Defendant allowed and paid for in the repairs at issue. *See* Dkt. No. 69 at ¶ 18. Defendant contends, and Plaintiff agrees, that Plaintiff "knew from past experience ('past' meaning relating to interactions with Nationwide having occurred prior to the earliest of the 19 claims/repair jobs at issue in the instant action) that Nationwide would not pay the hourly labor rate plaintiff would charge on the collision repair jobs[.]" *Id.* at ¶ 24.

In its first cause of action, Plaintiff alleges that "Defendants have refused to pay the Deficiencies for repairs on the First Party Assignors' Vehicles and thereby has violated its

obligation under the Policies and New York Insurance Law and regulations to repair the Vehicles to their pre-accident condition." Dkt. No. 25 at ¶ 27. As such, Plaintiff contends that it is entitled to damages as to that claim in the amount of $24,624.14. *See id.* at ¶ 28. In its second cause of action, with respect to the Third-Party Assignors, Defendant limited the costs it would cover to repair the vehicles to less than the full amount necessary to repair the vehicles to their pre-accident condition. *See id.* at ¶ 32. Plaintiff contends that "Defendant's limitation of costs was a material deceptive action because it knew when it made its limitation that it was not providing the full amount necessary" and that Defendant's failure to negotiate all elements of the specified claims was a deceptive business practice within the meaning of New York General Business Law § 349. *See id.* at ¶ 34. As such, Plaintiff alleges that it is entitled to damages in the amount of $18,093.04, plus attorneys' fees, on its second cause of action. *See id.* at ¶ 36.[3]

In their motion for summary judgment, Defendant argues that the Court should dismiss Plaintiff's first cause of action because "it is well-settled New York law that there is no private right of action for damages caused by alleged violations of New York Insurance Law § 2610 or Regulation 64 (11 NYCRR Part 216)." Dkt. No. 59-40 at 7. Further, Defendant argues that, "as assignee of the Nationwide auto insurance policyholders in the 14 First-Party claims plaintiff acquired no enforceable rights against Nationwide beyond the rights that the Nationwide auto

---

[3] Plaintiff's original complaint alleged an amount in controversy slightly in excess of $75,000, while Plaintiff's amended complaint alleges damages of $42,717.18. Plaintiff's subsequent withdrawal of its *quantum meruit* claim, which reduced the alleged damages below the $75,000 necessary for diversity jurisdiction, does not deprive the Court of subject-matter jurisdiction. *See Ryan v. Cerullo*, 343 F. Supp. 2d 157, 159 (D. Conn. 2004) ("It is well settled that once a federal district court's jurisdiction has attached to a case removed from state court, a plaintiff cannot deprive the district court of jurisdiction by reducing his claim below the requisite jurisdictional amount 'by stipulation, by affidavit, or by amendment of his pleadings'" (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292–93, 58 S. Ct. 586, 82 L. Ed. 845 (1938)); *see also Gucciardo v. Reliance Ins. Co.*, 84 S. Supp. 2d 399, 404 (E.D.N.Y. 2000) (citations omitted).

insurance policyholders had."  As such, Defendant argues that, "under the indisputable facts of the instant action plaintiff is not entitled as a matter of law to damages for any alleged breach of the auto insurance contracts because plaintiff cannot prove in this action . . . that the policyholders/assignors suffered any loss or damage arising from any alleged breach of the auto insurance contracts, and proving the existence of damage caused by an alleged breach of a contract is an essential and required element of proving a breach of contract action under established New York contract law."  *Id.* at 8.

As to Plaintiff's second cause of action, Defendant argues that Plaintiff cannot prove that it was materially misled or deceived by Defendant's estimates and claims handling associated with the nineteen insurance claims and the corresponding vehicle repair jobs at issue in this action.  *See id.*  Further, Defendant contends that Plaintiff cannot prove that either it or its assignors have been injured by reason of any alleged violation by Defendant of New York General Business Law § 349.  *See id.*  Additionally, Defendant asserts that, with the exception of the five Third-Party Assignor claims, Plaintiff's second cause of action seeks the very same damages it seeks in its first cause of action, and are therefore not independent of any loss suffered by the alleged breach of contract.  *See id.*  Additionally, Defendant contends that six of the New York General Business Law § 349 claims are time barred by the applicable statute of limitations.  *See id.* at 9.[4]  Finally, Defendant argues that "this Court cannot permit plaintiff to use New York General Business Law

---

[4] Plaintiff agrees that the following New York General Business Law § 349 claims are time barred by the applicable statute of limitations and, therefore, does not contest their dismissal: v-Gottuso; vi-Greenfield; vii-Labulis; x-McCauley; xiii-Sabene; and xiv-Sieh.  *See* Dkt. No. 69 at ¶ 23.  As such, the Court grants Defendant's motion as to the General Business Law claims against relating to these repairs.  The Court notes, however, that the breach of contract claims relating to these repairs are still at issue.

§ 349 to make an 'end-run' around the rule that there is no private cause of action for alleged violations of New York Insurance Law § 2601 or Regulation 64." *Id.*

### III. DISCUSSION

**A.    Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Relevant regulatory framework**

Part 216 of the New York State Insurance Department Regulations ("Regulation 64"),

entitled "Unfair Claims Settlement Practices and Claim Cost Control Measures," governs an

insurer's conduct in the automobile repair process, and provides rules for the processing of first

party motor vehicle physical damage claims and third party property damage claims arising under

motor vehicle liability insurance contracts.  *See* 11 N.Y.C.R.R. § 216.0(a).  Section 216.7 sets

forth the "[s]tandards for prompt, fair and equitable settlement of motor vehicle physical damage

claims."  11 N.Y.C.R.R. § 216.7.

When an individual's car is involved in an accident and the person makes an insurance

claim, the person's insurer may inspect the car.  *See id.* § 216.7(b)(1).  When inspecting the car,

the insurer must negotiate with the insured or the insured's "designated representative," which may

include an automobile repair shop such as Plaintiff.  *See id.*  Negotiations must be conducted in

"good faith," *id.* § 216.7(b)(7), and the insurer must make "a good faith offer of settlement,

sufficient to repair the vehicle to its condition immediately prior to the loss."  *Id.* § 216.7(b)(1).

After negotiations, if the parties cannot reach an "agreed price," which is defined as "the amount

agreed to by the insurer and the insured, or their representatives, as the reasonable cost to repair

damages to the motor vehicle resulting from the loss, without considering any deductible or other

deductions," *id.* § 216.7(a)(1), the insurer must furnish the insured with a prescribed notice of

rights letter.  This notice of rights letter indicates the insurer's offer, and provides that, upon the

insured's request, the insurer can recommend a repair shop that will make the repairs at a cost

equal to the insurer's estimate.  *See id.* § 216.7(b)(14)(i); 11 N.Y.C.R.R. § 216.12.  The notice of

rights letter further states that, if such request has not already been made, the insured must sign an

attached disclosure statement in order to enable the insurer to recommend a repair shop.  *See id.* §

216.12. Further, the disclosure statement advises the insured that, pursuant to New York State Insurance Law § 2610, the insurer cannot require that the repairs be made at a particular shop.

On July 16, 2008, the Superintendent of Insurance issued an opinion letter construing what constitutes "good faith negotiation" under Regulation 64. Specifically, the opinion letter provides that "a good faith negotiation need not result in an ultimate agreement on a settlement amount provided that a repair shop, reasonably convenient to the claimant, is able to repair the vehicle for the amount the insurer offers in settlement." Ops. Gen. Counsel N.Y.S. Ins. Dept. No. 08-07-09 (July 16, 2008), *available at* http://www.dfs.ny.gov/insurance/ogco2008/rg08070 9.htm. This July 16, 2008 opinion letter also refers to an April 16, 2002 opinion letter which indicates that, "if an insurer makes a good faith offer to the insured to pay for the cost of repair and identifies a facility that will repair the damage at the cost estimated by the insurer, the insurer is not obligated to pay for any repair cost that exceeds the amount of the good faith offer required pursuant to 11 NYCRR § 216.7(b)(1)." *Id.* (citation omitted). Moreover, the letter opines that, "[i]n such a circumstance, if the insured elects to repair the vehicle at another facility at a higher repair cost, the insurer is not financially responsible for the excess cost above the amount of the insurer's offer." *Id.* (citation omitted). A December 31, 2008 opinion letter further states that "there is no requirement that either side move off its respective initial position in a negotiation, and an insurer is not required to alter its initial negotiating position on labor rates, or any other negotiable issue, provided that its position is taken in good faith." Ops. Gen. Counsel N.Y.S. Ins. Dept. No. 08-12-09 (Dec. 31, 2008), *available at* http://www.dfs.ny.gov/ insurance/ogco2008/rg081209.htm.

## C. Breach of contract[5]

In its motion for summary judgment, Defendant contends that Plaintiff's breach of contract cause of action must be dismiss because the First-Party Assignors suffered no damages. *See* Dkt. No. 59-40 at 18-20. Defendant argues that it is indisputable that Plaintiff had no direct contract or agreement with Defendant. *See id.* at 18. Further, the deposition testimony of Plaintiff's principal Michael Orso shows that Plaintiff "has not tried to collect from the assignors the so-called 'deficiencies', and that further, plaintiff has no intention of trying to collect the 'deficiencies' from the assignors[.]" *Id.* (citing Dkt. No. 59-17 at 232-33; Dkt. No. 59-6 at 5). Further, Defendant contends that Plaintiff has acknowledged that "'the condition of the Vehicles after the repairs matched the pre-accident function, appearance and safety[;]'" and, therefore, the First-Party Assignors suffered no harm. *See id.* at 18-19. Alternatively, Defendant argues that the breach of contract cause of action must be dismissed because the assignments provided Plaintiff no rights beyond what the First-Party Assignors had. *See id.* at 20-21.

Under New York law, a plaintiff alleging a breach of contract claim must establish the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the

---

[5] Plaintiff previously clarified that it is not asserting a breach of contract claim as to the Third-Party Assignors, but only as to the fourteen First-Party Assignor claims.

parties' reasonable expectations." *131 Heartland Blvd. Corp. v. C.J. Jon Corp.*, 82 A.D.3d 1188, 1189 (2d Dep't 2011) (citations omitted).

"In order to adequately allege the existence of an agreement, 'a plaintiff must "plead the provisions of the contract upon which the claim is based."'" *Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (quoting *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837(HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006) (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816(MBM), 92 Civ. 5283(MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (quoting *Griffin Bros., Inc. v. Yatto*, 68 A.D.2d 1009, 1009, 415 N.Y.S.2d 114, 114 (App. Div. 3d Dep't 1979)))). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (citing *Window Headquarters*, 1993 WL 312899, at *3 (citing *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 739 F. Supp. 744, 748 (N.D.N.Y. 1990))). "However, the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" *Id.* (quoting *Phoenix Four*, 2006 WL 399396, at *10; *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928, 514 N.Y.S.2d 1002, 1003 (App. Div. 3d Dep't 1987)). Further, in the context of insurance contracts, the "[a]pplicable provisions of the Insurance Law are 'deemed to [be] part of [an] insurance contract as though written into it.'" *Trizzano v. Allstate Ins. Co.*, 7 A.D.3d 783, 785 (2d Dep't 2004) (quotation and other citations omitted).

In response to the motion, Plaintiff contends that it "has both lay and expert evidence that Defendant did not pay the reasonable cost of repairing the vehicles to pre-accident condition" as required by the contract. *See* Dkt. No. 71 at 6 (citing SAF ¶¶ 27-29; Cannon Decl. ¶ 12). Further, Plaintiff continues that "[n]ot only did Nick's charge the insureds more than Defendant paid to

repair the vehicles, . . . but an expert analysis of the market for collision repair shows that the reasonable market repair costs are more than what Defendant paid." *Id.* Moreover, Plaintiff contends that Defendant "does not fulfill this contractual obligation merely by locating another shop that allegedly would do the work for its estimate. Because Nationwide is prohibited from steering by New York Insurance Law 2610, if the charges from the Customer's chosen shop are reasonable, Nationwide must pay them." *Id.* at 7. Further, Plaintiff argues that it is irrelevant that it did collect any overdue amount from the vehicle owners, because Defendant was required to pay the reasonable cost of repairing the vehicle to pre-accident condition, even if no repairs were made to the vehicle. *See id.* at 8.

First, the Court agrees with Plaintiff that simply because Plaintiff did not seek to collect any amount over what Defendant paid from its customers does not require dismissal of this claim. Defendant was required to pay the amount required to return the vehicle to pre-accident condition, regardless of whether any repairs were made. Whether the contract was breached hinges on whether the amount paid to Plaintiff was sufficient to satisfy this requirement. As the assignee, Plaintiff stands in the shoes of the First Party Assignor and has the same rights as the insured under the policies. *See Citibank N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) (citation omitted). Since the First Party Assignors could have pursued this action but for the assignment to Plaintiff, it is without question that Plaintiff, as the assignee, can now pursue this claim. Further, the Court finds that section 2601 and Regulation 64 do not bar Plaintiff's first party breach of contract claims. *See Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Management, Inc.*, 18 N.Y.3d 341, 350 (2011).

These findings notwithstanding, the Court finds that Defendant's motion for summary judgment must be granted. First, the Court agrees with Defendant that Dr. Jennings' "expert"

report actually supports Defendant's position. *See* Dkt. No. 68-10. In a survey of 173 repair shops in Onondaga County requested by Plaintiff's counsel, it was determined that, "[o]f those shops that have separate rates, the posted or most typical hourly late rate for body work is $51.77; for painting is $52.30; for framing is $62.47; for refinishing is $50.71; and for sheet metal work is $52.17." *Id.* at 29, 31. During the time period at issue, Defendant was offering $44 to $46 per hour, while Plaintiff was seeking between $68 and $75 per hour. In his deposition, Mr. Orso admitted that he does not charge his posted labor rate when work comes in from other shops or, in some cases, when individuals ask for a reduced rate. *See* Dkt. No. 59-16 at 62.

Further, the parties agree that the vehicles at issue were returned to their pre-accident condition. Plaintiff, however, in entirely conclusory fashion, claims that the vehicle could not be returned to pre-accident condition for the amount offered by Defendant, and eventually accepted by Plaintiff. Aside from the difference in labor rates, no other particular deficiency is discussed. Although Plaintiff included the alleged notices of deficiency, Plaintiff has made no attempt to explain these documents or why the alleged deficiencies identified therein were necessary to return the vehicles to their pre-accident conditions. *See, e.g.,* Dkt. No. 67-4. The Court notes, however, that nearly all of the alleged deficiencies are due to the difference in labor rates Defendant paid compared to the rates Plaintiff sought. In fact, the only deficiencies Plaintiff specifically addresses in its opposition to Defendant's motion relate to the alleged insufficient labor rates at issue. *See* Dkt. No. 70 at ¶¶ 67-68.

In his declaration, Mr. Orso alleges as follows:

> Nick's has incurred significant out-of-pocket expense as a result of Nationwide's failure to allow for all reasonable charges for the 19 repair jobs at issue in this case. In addition to what I've already mentioned, we expended money on paint and refinishing materials, as well as monies for parts. Nick's is required to pay out of pocket

> costs for employee wages and benefits to provide the necessary
> repairs for which Nationwide is not providing adequate allowance.

Dkt. No. 67 at ¶ 17. First, the Court notes that nowhere in the contract at issue is Defendant responsible for the payment of wages and benefits for Plaintiff's employees. Rather, this money undoubtedly is part of the labor rate charged by Plaintiff for repairs made. The fact that Plaintiff may pay their employees more than other auto body shops in the area does not in any way indicate that Defendant breached the contract in refusing to pay Plaintiff's higher labor rates. Further, the Court has no doubt that Plaintiff paid for paint, refinishing materials, and parts for the vehicle repairs at issue, as evidenced through the invoices attached to Mr. Orso's declaration. Plaintiff has failed, however, to direct the Court to any evidence demonstrating that Defendant failed to pay for these items.

Moreover, Kevin Reynolds, an estimator for Defendant, testified that the dollar amount provided in his estimate was what he believed was necessary to return the vehicles to their pre-accident condition. *See* Dkt. No. 74-4 at 158-59. Further, Mr. Reynolds testified that, prior to sending the letter to the customer indicating that there is a shop available to perform the work at the price listed, he does not contact the other available shop prior to the letter being sent. *See id.* at 159-165. However, if the customer returns the signed 2610 Letter, Mr. Reynolds would then contact auto body shops in the area and provide the names of at least two shops who would be willing to do the repair for the quoted price, barring any hidden damage. *See id.* Further, Mr. Reynolds indicates that the software Defendant uses to generate its estimates is "the industry standard software." *See id.* at 165-169. Mr. Reynolds acknowledged that the other software options are valid estimating systems and that the different systems often produce different results in the estimated price to repair a vehicle. *See id.* at 167-70. Although Plaintiff makes much of the

fact that Defendant does not contact other auto body shops prior sending the 2610 Letter and that the software programs generate different results, neither of these facts support their breach of contract claim. Mr. Reynolds indicated that the representation in the 2610 Letter regarding a shop willing to repair the vehicle at the price quoted is based on his working relationship with auto body shops in the area and because he knows that they are willing to perform the work at the labor rate used to generate the quote.

Based on the foregoing, the Court grants Defendant's motion for summary judgment as to Plaintiff's breach of contract claim.

## D. General Business Law § 349

Defendant asserts that Plaintiff's General Business Law § 349 cause of action must be dismissed for multiple reasons. *See* Dkt. No. 59-40 at 22-30. Specifically, Defendant contends that, (1) Plaintiff cannot prove any materially misleading or deceptive conduct; (2) Plaintiff cannot prove that it has been injured by reason of any alleged violation by Defendant of section 349; (3) the alleged violations are not independent of the claimed losses alleged by Plaintiff's first cause of action; and (4) the statute of limitations bars six of the nineteen claims at issue. *See id.*[6]

---

[6] After the motion for summary judgment was filed, the Fourth Department decided *Nick's Garage, Inc. v. Liberty Mut. Fire Ins. Co.*, 120 A.D.3d 967 (4th Dep't 2014). The Court finds that this decision, as well as its companion decisions, does not impact the present matter. Specifically, the Fourth Department was addressing the trial court's denial of a motion to dismiss, not summary judgment. *See id.* Further, at issue on appeal was whether Insurance Law § 3420 precluded the plaintiff's *quantum meruit* and Insurance Law § 349 claims, which the court answered in the negative. Given the different procedural posture of the present matter and the fact that Defendant has not argued that section 3420 precludes Plaintiff's second cause of action, the decision is inapplicable. Further, the Court has considered *Jeffrey's Auto Body, Inc. v. Allstate Ins. Co.*, 125 A.D.3d 1342 (4th Dep't 2015). In addition to being a decision regarding a motion to dismiss, the court's only substantive discussion pertained to issues not relevant here.

General Business Law § 349 declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "'Section 349 governs consumer-oriented conduct and, on its face, applies to virtually all economic activity.'" *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 100 (2d Dep't 2012) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999)) (other citations omitted).

To successfully assert a claim under General Business Law § 349(h), "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes–Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009); *see also Cohen v. JP Morgan Chase & Co.*, 489 F.3d 111, 126 (2d Cir. 2007) (citation omitted).

### 1. Consumer or widespread public injury

"[P]arties claiming the benefit of [General Business Law § 349(h) ] must, at the threshold, charge conduct that is consumer oriented." *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (citation omitted); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 334 (1999) (citation omitted); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). "Private contract disputes, unique to the parties . . . [do] not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25 (citation omitted); *see also New York Univ.*, 87 N.Y.2d at 320. A "'single shot transaction,'" *Genesco Entertainment, Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984), which is "tailored to meet the purchaser's wishes and requirements," does not, without more, constitute consumer-oriented conduct for the purposes of this statute. *See New York Univ.*,

87 N.Y.2d at 321; *see also Biancone v. Bossi*, 24 A.D.3d 582, 583 (2d Dep't 2005) (citations omitted).

"On the other hand, conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved 'an extensive marketing scheme' . . . , where it involved the 'multi-media dissemination of information to the public' . . . , and where it constituted a standard or routine practice that was 'consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers.'" *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 101 (2d Dep't 2012) (internal and other quotations omitted). "Simply put, '[the] defendant's acts or practices must have a broad impact on consumers at large.'" *Id.* (quotation and other citations omitted).

The conduct alleged by Plaintiff in this case relates to a number of policyholders who either are or were Plaintiff's customers, and all of whom are subject to Defendant's standard form insurance policy. Therefore, this dispute is not "limited to a challenge regarding coverage made on the basis of facts unique to [a single insured], but relate to consumer-oriented conduct affecting the public at large." *Shebar v. Metro. Life Ins.*, 25 A.D.3d 858, 859 (3d Dep't 2006) (citations omitted). Where, as here, a defendant enters into "contractual relationship[s] with customers nationwide" *via* a form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior affects the public generally and, therefore, satisfies the requirement of "consumer-oriented" conduct within the meaning of Section 349. *See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (holding that section 349 was applicable to insurers where the plaintiffs demonstrated that similar practices had been employed by the defendant against multiple insureds); *Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 531 (2d Dep't 2001) (holding that "[a]n insurance carrier's failure to pay

benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349") (citations omitted).

Based on the foregoing, the Court finds that Plaintiff's section 349 satisfies the consumer-oriented prong of the statute.

### 2. Deceptive or misleading practice

The New York Court of Appeals has held that, under Section 349, "[w]hether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (quotation and other citations omitted). A deceptive practice, however, "need not reach the level of common-law fraud to be actionable under section 349," and reliance is not an element of a section 349 claim. *See id.* (citations omitted). "The plaintiff, however, must show that the defendant's 'material deceptive act' caused the injury." *Id.* (quotation omitted).

In the present matter, the Court finds that Plaintiff's have failed to identify and submit any proof regarding any allegedly misleading or deceptive practice sufficient to support their section 349 cause of action. The record clearly shows that Defendant's estimates were not materially misleading or deceptive. The estimates of the costs of repairs that Defendant provided to Plaintiff on the nineteen vehicle repair jobs at issue were prepared using industry-accepted software for writing collision repair estimates and determining repair costs, and communicated in a straightforward and clear manner on as to the dollar amount that Defendant believed would be the cost of repairing and restoring the vehicles to their pre-accident condition. *See* Dkt. No. 62 at ¶15. Further, Plaintiff's principal, Michael Orso, testified at his deposition that there was not a significant difference between the Mitchell Ultimate estimating software used by Plaintiff to

create estimates of repair costs and the CCC-1 estimating software used by Defendant to create estimates of repair costs. *See* Dkt. No. 59-15 at 66-68.

Plaintiff contends that courts have found the material deceptive act requirement "satisfied by conduct evidencing a lack of good faith in the claims settlement process." Dkt. No. 71 at 11-12 (citing *Makuch v. N.Y. Cent. Mut. Fire Ins. Co.*, 12 A.D.3d 1110, 1111 (4th Dep't 2004); *Wilner et al. v. Allstate Ins. Co.*, 71 A.D.3d 155, 166 (2d Dep't 2010); *Shebar v. Metro. Life Ins. Co.*, 25 A.D.3d 858, 858-859 (3d Dep't 2006)). Plaintiff contends that, when Defendant's adjusters reached an impasse with respect to payments necessary to restore a vehicle to pre-accident condition, Defendant sent Notice of Rights/2610 letters to its customers asserting that Defendant's offer was "'sufficient to repair your vehicle to [its] pre-accident condition at a shop located reasonably convenient to you. We are unable to provide you with the identity of the repair shop that will repair your vehicle at our estimate[.]'" Dkt. No. 71 at 12 (quotation omitted). Although Plaintiff contends that these letters were sent to eight of the vehicle owners, six of the claims have been dismissed on statute of limitations grounds. As such, only the letters sent to Foster and Marko are relevant here. Plaintiff contends that "[a] trier of fact could reasonably conclude that the references in the letter to 'the identity of the repair shop' . . . would lead a customer to believe that Nationwide had contacted a repair shop which agreed to perform the repairs." *Id.* at 12-13. Further, Plaintiff contends that "a trier of fact could reasonably conclude that the representation in the letter that alleged repair shops 'will repair your vehicle at our estimate' would lead a customer to believe that another repair shop besides Nick's had already agreed to do repairs at Nationwide's estimates."

First, the Court finds that the cases upon which Plaintiff relies are distinguishable. None of the three cases dealt with estimates and/or payments of insurers on auto collision repair jobs

and in none of the three cases did the court "find" that conduct evidencing a lack of good faith in the claims settlement process actually constituted a violation of GBL § 349. *Makuch* is distinguishable because it dealt primarily with whether the insurer's conduct was "consumer-oriented," which is not at issue in the present matter. *See Makuch*, 12 A.D.3d at 1111. *Wilner* dealt with allegations of insurers delaying investigation of claims and *Shebar* dealt with allegations that the insurer not investigating claims for long-term disability benefits in a timely fashion or in accord with acceptable medical standards. *See Wilner*, 71 A.D.3d at 165-66; *Shebar*, 25 A.D.3d at 858-59. Finally, all three of the cases cited by Plaintiff were before the courts on motions to dismiss, not summary judgment.

Further, to the extent that Plaintiff contends that the Defendant's alleged lack of good faith in the claims settlement process constituted a deceptive or misleading practice, the Court disagrees. The estimates of the costs of repairs that Defendant provided to Plaintiff on the vehicle repair jobs at issue, which estimates were prepared using industry-accepted software for writing collision repairs and determining repair costs, communicated in a straightforward and clear manner on each claim that dollar amount that Defendant reasonably believed would be the cost of repairing and restoring the vehicles to their pre-loss condition. The deposition testimony of Plaintiff's estimator, Larry Zaleppa, evidences that Plaintiff had no integrity issues with Defendant's adjusters and believed them to be trustworthy. *See* Dkt. No. 59-18 at 45-46. Further, Mr. Zaleppa acknowledged that he had never experienced Defendant's adjusters misleading or deceiving Plaintiff. *See id.* at 46-48, 57-58, 81.

Further, the parties agree that most of the deficiencies Plaintiff claims that it is owed is due to the hourly labor rates Defendant allowed and paid for in the repairs at issue. *See* Dkt. No. 69 at ¶ 18. Defendant contends, and Plaintiff agrees, that Plaintiff "knew from past experience ('past'

meaning relating to interactions with Nationwide having occurred prior to the earliest of the 19 claims/repair jobs at issue in the instant action) that Nationwide would not pay the hourly labor rate plaintiff would charge on the collision repair jobs[.]" *Id.* at ¶ 24. Plaintiff's principal, Michael Orso, testified that some repair shops in the Syracuse market would have accepted Defendant's hourly labor rate offers on the repairs oat issue during the pertinent 2007-2012 time period. *See* Dkt. No. 59-16 at 56-58. Further, Plaintiff acknowledges that it knew that Defendant would not pay the hourly labor rate Plaintiff would charge on the collision repair jobs from their past interactions. *See* Dkt. No. 69 at ¶ 24. The case law makes clear that there can be no "claim for deceptive acts or practices when the allegedly deceptive practice was fully disclosed." *Lincoln Life Annuity Co. of N.Y. v. Bernstein*, 24 Misc. 3d 1211A (Sup. Ct. Onondaga Cnty. 2009) (citing *Broder v. MBNA Corp.*, 281 A.D.2d 369 (1st Dep't 2001)).

To the extent that Plaintiff claims that the deceptive act or practice was Defendant's failure to negotiate in good faith, the Court finds their argument to be without merit. First, the documents provided in support of Plaintiff's "expert" report support Defendant's position. *See* Dkt. No. 68-10 at 29. In a survey of 173 repair shops in Onondaga County requested by Plaintiff's counsel, it was determined that, "[o]f those shops that have separate rates, the posted or most typical hourly late rate for body work is $51.77; for painting is $52.30; for framing is $62.47; for refinishing is $50.71; and for sheet metal work is $52.17." *Id.*[7] During the time period at issue, Defendant was offering $44 to $46 per hour, while Plaintiff was seeking between $68 and $75 per hour. As such, the information provided in support of Plaintiff's "expert" report indicates that Defendant was, in fact, paying reasonable labor rates during the time in question for auto body

---

[7] Although this survey also discussed posted rates for auto mechanical work, those rates are irrelevant to the present matter.

work.  As such, a refusal to negotiate as to a higher labor rate, when the labor rate is accepted in the market, is not evidence of a deceptive act or bad faith negotiation.  In fact, the failure to read an agreed price/labor rate was anticipated by the Department of Insurance.  *See Ops. General Counsel, N.Y.S. Ins. Dept.*, 08-07-09 (July 16, 2008).  Morever, this survey does not indicate whether it was for the entire relevant period (2007 - 2012) or if it merely pertained to the shops' current posted rate.  Finally, as Mr. Orso himself acknowledged, shops rarely receive their posted rate, whether from insurance companies or from individuals paying for the repairs.  As such, the insignificant differences between Defendant's allowed rate and the local average is not an indication of deception or bad faith negotiation.

In his declaration, Mr. Orso also discusses the fact that his garage often has to repair work done by other garages who failed to return cars to pre-accident condition.  *See* Dkt. No. 67.  Mr. Orso also discusses during his deposition the fact that his shop provides higher quality services than many others in the area, and that is why his rates are higher than most.  While the Court has no reason to doubt the quality of the work he does, it does not support his position regarding Defendant's alleged deceptive practices.  Although consumers may prefer to use his shop because of the higher quality services, it does not mean that the insurer is necessarily responsible for the higher costs associated with those services.  When a person decides to consult a doctor who is out of his or her health insurance network, the fact that the insurer only pays a portion of the bill is not considered a deceptive practice.  Rather, it is simply an insured deciding that he or she wants to obtain care from a different provider, for whatever the reason may be, even though the services could have been performed by someone in network, without the accompanying out of pocket expenses.  Similarly, in the present matter, the insured is free to accept the services of Plaintiff if they so choose, even though they may be required to pay an amount in addition to the deductible.

The fact that some garages who charge these lower rates may perform "shoddy" work, as Plaintiff alleges, does not mean that no garages were available who could and would return the vehicles to pre-accident condition for the amount offered.

Finally, the Court finds unpersuasive that Defendant's statement that they had a shop willing to repair the vehicles at issue for the amount offered constituted a materially deceptive act. Even assuming that Defendant did not reach out to these shops prior to sending out the letter required by the regulations when the parties fail to agree upon a price, Defendant has a longstanding relationship with several auto body repair shops in the area and knew from past experiences that they were willing to accept their hourly rate. *See* Dkt. No. 59-22 at ¶¶ 27-32.

Based on the foregoing, the Court finds that Defendant's motion for summary judgment on this ground must be granted because Plaintiff has failed to put forth any evidence indicating a materially false or deceptive business practice.

### 3. N.Y. Insurance Law § 2601

"Section 2601 prohibits insurers from engaging 'in unfair claim settlement practices' by, for example, 'knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue.' N.Y. Ins. Law § 2601. As discussed in the background section of this opinion, § 2610 prohibits steering. Courts have held that a private right of action is not available under either statute." *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 219 (E.D.N.Y. 2010) (citations omitted). The Second Circuit has held that "[p]laintiffs cannot circumvent" the lack of a private right of action under a statute "by claiming [that a violation of the statute] is actionable under § 349." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

In *M.V.B.*, the plaintiff alleged that the defendant had engaged in a retaliatory scheme to dissuade the defendant's insureds from patronizing the plaintiff. *See M.V.B. Collision*, 728 F. Supp. 2d at 219-20. "The alleged scheme involved no only 'unfair settlement practices' and steering but also, *inter alia*, alleged retaliatory totaling of vehicles, defamatory comments, and threats that insureds would 'wind up in civil remedies if they took their car to Mid Island Collision.'" *Id.* Based on these facts, the court found that the "scheme extended beyond steering, beyond settlement practices, and, accordingly, beyond § 2601 and § 2610." *Id.* at 220 (citation omitted).

In the present matter, unlike the situation in *M.V.B. Collision*, Plaintiff's GBL § 349 claim does not allege any conduct beyond the alleged unfair settlement practices. Specifically, the amended complaint alleges that "Defendant frequently provides a lower estimate of the cost of repairs than that which is actually required to repair a given vehicle to its pre-loss condition." Dkt. No. 25 at ¶ 31. With respect to certain assignors, the amended complaint contends that "Defendant limited the costs it would cover to repair the Vehicles to less than the full amount necessary to repair the Vehicles to their pre-Accident condition." *Id.* at ¶ 32. Plaintiff argues that this conduct was "a material deceptive action because it knew when it made its limitation that it was not providing the full amount necessary to restore the Vehicles to their pre-Accident condition." *Id.* at ¶ 33. Finally, Plaintiff asserts that "Defendant's failure to negotiate all elements of the specified claim as required by regulation constitutes a deceptive business practice within the meaning of General Business Law § 349." *Id.* at ¶ 34.

Unlike *M.V.B.*, Plaintiff has not alleged or submitted any evidence beyond the alleged unfair settlement practices. Although *M.V.B.* makes clear that, in certain situations, a plaintiff may be able to set forth a free-standing GBL § 349 claim, the present matter is clearly not such a

case. *See Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 532 (2d Dep't 2001) (holding that "[a]n insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349") (citations omitted).

As such, in the alternative, the Court finds that Plaintiff's GBL § 349 claim is precluded by N.Y. Insurance Law § 2601.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge